McKENZIE COUNTY, a Body Corporate and a Political Subdivision of the State of North Dakota, Appellant, v. O. L. CASADY and the Northern Town & Land Company, Respondents, and FIRST NATIONAL BANK OF WILLISTON, Intervener and Respondent.

(214 N. W. 461.)

**Fraudulent conveyances — charge of fraud not sustained by evidence.**

1. Evidence examined and found to be inadequate to support the charge of fraud and conspiracy as between defendants Casady and Northern Town & Land Company, or as between Casady and intervener.

**Judgment — judgment lien — not superior to right of owner of unrecorded assignment of contract.**

2. The lien of a judgment against the equitable interest of the judgment debtor in land acquired by him under a contract for deed, the record title to which is in the name of his vendor, is not superior to the equity, right and interest of one holding a prior unrecorded assignment of the contract, given in good faith and for value, as security for the payment of a bona fide debt owing him by the judgment debtor.

**Lis pendens — notice of lis pendens does not create lien.**

3. The notice of lis pendens provided by § 7425, Comp. Laws 1913, does not of itself create in the party recording it any lien against or interest in the real estate therein described.

**Lis pendens — statutory notice — constructive notice, party failing to intervene bound by judgment.**

4. The notice of lis pendens provided by § 7425, Comp. Laws 1913, constitutes and gives constructive notice to the public of the pendency of the action and of its object and purpose, that a person not made a party to the action, holding an outstanding title or right thereto, may intervene, assert his claim, and have the superiority thereof adjudicated, and failing to do so, he will be bound by all proceedings taken after the filing of such notice to the same extent as if he was a party to the action.

**Fraudulent conveyances — return nulla bona on execution, foundation to invoke aid of court of equity.**

5. The issuance to the sheriff of the county in which the debtor resides and return nulla bona of an execution upon a judgment is sufficient foundation upon which to invoke the aid of the court of equity, to ascertain and determine

Annotation.— (2) As to necessity of exhausting remedy against other judgment debtor before bringing a suit to set aside conveyance as fraudulent, see annotation in 22 A.L.R. 200; 12 R. C. L. 637; 5 R. C. L. Supp. 650, 651; 6 R. C. L. Supp. 717.

the nature and extent of the interest of the judgment creditor in and to real estate alleged to be owned by him, the title to which appears of record in another.

**Fraudulent conveyances — judgment creditor entitled to equity's aid.**

6. In this case the plaintiff had the right, in aid of its judgment, to have the court determine the ownership of the real estate in question, and the extent and nature of the equity, right and interest owned by the judgment creditor.

Opinion filed June 18, 1927.

Deeds, 18 C. J. § 184 p. 247 n. 44. Fraudulent Conveyances, 27 C. J. § 607 p. 742 n. 17; § 781 p. 835 n. 63. Judgments, 34 C. J. § 870 p. 568 n. 75, 81; § 871 p. 569 n. 87; § 909 p. 594 n. 79; § 933 p. 614 n. 82 New. Lis Pendens, 38 C. J. § 86 p. 49 n. 19; § 97 p. 58 n. 32; § 98 p. 59 n. 33, 35, 37.

Appeal from the District Court of McKenzie County, *Burr,* J.

Modified and remanded.

*William Lemke,* for appellant.

"Where the name of the grantee is left blank a deed is void so long as such blank remains." 8 R. C. L. § 32.

"If the grantee's name is left in blank in a conveyance the legal title does not pass by the conveyance." 18 C. J. § 57.

"An agent, not authorized in writing, cannot insert the name of the grantee in a deed executed and acknowledged by a grantor with such name left blank so as to convey title to a grantee who knows that the instrument was executed in blank." Lund v. Thackery, — S. D. —, 99 N. W. 856.

A mortgagee who has failed to record his mortgage before the institution and lis pendens of an action involving the title to the property mortgaged, stands in the same position as a purchaser pendente lite and is bound by the decree entered in the suit to the same extent as if he had been made a party to the action. Wolfenberger v. Hubbard, 184 Ind. 25, Ann. Cas. 1918C, 81.

"From the time of the filing such notice shall the pendency of such action be constructive notice to any purchaser or encumbrancer to be affected thereby; and every person whose conveyance or encumbrance is subsequently executed, or subsequently recorded, shall be deemed to

be a subsequent purchaser or encumbrancer." Munger v. Tjbeard & Bros. — Neb. —, 113 N. W. 214.

"The very purpose of the recording statute is to require owners or encumbrancers of real property to give notice of their rights by recording the evidence of them." Yellowstone Nat. Bank v. McCullough (Mont.) 150 Pac. 919.

*Fisk & Craven,* for respondent.

Appellant not having specified the question of fact it desires the supreme court to review and not specifying that it desires a review of the entire case, therefore, all questions of fact found by the trial court are deemed on this appeal to have been properly decided by the trial court, and this court can go no further than to determine whether the pleadings and findings of fact will sustain the judgment. Lunde v. Irish, 50 N. D. 312, 195 N. W. 826; Bank v. Norton, 14 N. D. 143.

A judgment is not a lien on a mere equitable estate or interest of a judgment debtor in real property such as under a contract of sale; and that § 7691, Comp. Laws 1913, has no application to mere equitable interests, but confers a lien only on the legal title held by the debtor. Cummings v. Duncan, 22 N. D. 534, 134 N. W. 712.

"A vendee's interest under an ordinary contract for purchase . . . is not real property and may not be sold." Sax v. Miracle, 35 N. D. 458, 161 N. W. 601.

A purchaser to whom a conveyance was made by deed, blank as to name of grantee, was held to have implied authority to fill in the name of one to whom he had sold the land. Logan v. Miller, 106 Iowa, 511, 76 N. W. 1005.

Blank space for name of grantee may be filled in during the lifetime of the grantor and under parol authority. Johnson v. Rast, — Minn. —, 204 N. W. 642.

"A person having executed an instrument leaving blank spaces therein to be filled, and delivers the same in such imperfect condition to another for use, the presumption is, nothing appearing to the contrary, that such person intended to confer upon such other person, authority to complete the instrument." Fried v. Yahr, 126 Wis. 291, 104 N. W. 997.

PUGH, Dist. J.  Plaintiff seeks to have the title to the real estate hereinafter described adjudged to be in defendant Casady, and to subject said real estate to execution on a judgment in its favor against said defendant.  The facts necessary to a consideration of the controversy are, in the main, undisputed.  May 1, 1924, plaintiff recovered judgment against defendant Casady in the sum of $13,395.54.  Execution was issued March 31, 1925, received April 2, 1925, by the sheriff of McKenzie county, and by him returned nulla bona April 10, 1925. The defendant Northern Town & Land Company entered into a contract for deed with defendant Casady, which was dated December 12, 1916, whereby, as vendor it agreed to sell and convey to Casady all that part of lots one and two of the west half of the northwest quarter of section 19, township 150, north, of range 98, lying without the platted portion of the town of Watford, and also all that portion of the east half of the northeast quarter of section 24, township 150, north, of range 99, lying north of the Great Northern Railway Company's right of way, and without the platted portion of the town of Watford, excepting also the right of way and station grounds of the Great Northern Railway Company, and also excepting the first addition to the town of Watford.  On or about January 23, 1922, Casady was indebted to intervener, bank, in the sum of about $3,500, which was then increased by an advance to him by the bank of upwards of $2,000 additional money.  As security for the payment of said sums of money, Casady executed and delivered to the bank an assignment of said contract for deed.  Notes were given by Casady to the bank representing said indebtedness and said notes were from year to year renewed, the last renewal being November 18, 1925, at which time there was unpaid on said indebtedness $6,466.  Casady fully performed the contract for deed and in the month of October, 1924, defendant Northern Town & Land Company, to perform on its part, executed thirty deeds, in blank as to the grantee, one for each separate lot, and also two quitclaim deeds, in blank as to the grantee, in which the property referred to in the contract for deed is described by metes and bounds, one deed for each parcel.  These deeds were mailed to Casady, who delivered all of the deeds to intervener.  The name of intervener was by it inserted in the two last described deeds and said deeds were recorded in the office of the register of deeds June 1, 1925.  Plaintiff

commenced this action the latter part of May, 1925. The summons and complaint were filed in the office of the clerk of court May 29, 1925, and, on the same day, a notice of lis pendens was filed in the office of the register of deeds. Defendant Northern Town & Land Company, by answer, admitted the making of the contract, alleged fulfilment of the terms and conditions thereof by defendant Casady, that it had parted with title to the property by making, executing and delivering deeds to Casady, and that it had no further interest in the property. Defendant Casady did not answer. The intervener claims title to the premises through the assignment of the contract and the delivery to it of said deeds.

The plaintiff's theory is that title to the property is in Northern Town & Land Company, with the equitable title in Casady; that Casady is entitled to a conveyance to him; that plaintiff has a lien by and through its judgment upon the premises prior and superior to the claim of right and interest therein by intervener. The district court rendered judgment in favor of intervener for the dismissal of the action, from which judgment plaintiff prosecutes this appeal.

The first question presented by the record relates to fraud and conspiracy. Plaintiff alleges: "That the defendant O. L. Casady, conspired with the defendant, the Northern Town & Land Company, to dispose of its said lands in fraud of said Casady's creditors, and to conceal and cover up the same, so that his creditors could not reach it; that in pursuance of this scheme, and with intent to delay and defraud said Casady's creditors, it was mutually arranged and agreed by and between the defendants that the transfer of said lands to Casady should not be made, and that the defendant, the Northern Town & Land Company, should retain the record title, under the fraudulent pretense that they were owners thereof, and that the said lands should be sold and disposed of by the Northern Town & Land Company as their own lands, and the sums realized from the sales of said lands should be secretly turned and paid over to the defendant, O. L. Casady. That the defendant, O. L. Casady, is also trying to sell and dispose of said land under the fraudulent pretense that he is the agent of the Northern Town & Land Company, when in truth and in fact he is the owner of said lands. That in pursuance of said conspiracy, fraudulent arrangement and agreement, said land was not transferred by deed or

otherwise by the Northern Town & Land Company to the defendant O. L. Casady, or anyone else, and that the Northern Town & Land Company is offering for sale the said lands as their own."

September 30, 1925, the First National Bank, as intervener, served its answer upon counsel for the plaintiff; on the 7th of June, 1926, an amended answer in behalf of intervener was served on counsel; and again September 13, 1926, intervener made its second amended answer, setting forth in detail the transactions between it and Casady, and served the same on counsel. Neither by amended or supplemental complaint nor reply has plaintiff challenged the good faith of Casady or the bank or either of them relative to said transactions. The only fraud alleged by plaintiff to have been committed are the charges of fraud and conspiracy between Casady and the Northern Town & Land Company, although upon the trial of the action, the conflict seems to have centered about the assignment by Casady to the bank. The court found "that no fraud nor conspiracy as alleged in the complaint or otherwise, has been proven." Upon careful consideration of all the evidence in the case, we are satisfied it is inadequate to prove fraud or conspiracy. To prove the allegations of the complaint, plaintiff introduced in evidence abstracts of the title to the premises, to show the absence from the record of the contract for deed and the assignment and that the title remained in the land company, although Casady had performed the contract on his part. It is insisted this is a part of the plan and scheme of the conspiracy. Neither Casady nor the intervener owed a duty to plaintiff to record these instruments (Moulton v. Kolodzik, 97 Minn. 423, 107 N. W. 154, 7 Ann. Cas. 1090), and it certainly was not to the interest of the vendor so to do. The evidence also developed that deeds to parcels of the land had been executed in blank as to the name of the grantee by the land company and in this form delivered to Casady; and it is argued that this, also, was done according to the design existing between Casady and the land company to secrete the property from the creditors of Casady. The testimony, however, shows that Casady sold parcels of the land; that as sales were made he requested deeds therefor, which were sent him, executed in blank, with authority to fill in the names of the grantees. Plaintiff could not have been disadvantageously affected thereby. The execution in blank of the final deeds, some thirty-two in number,

forms, it is said, an additional act to carry out the design and purpose to defraud. The evidence, however, shows that when Casady had completed payment under the contract in October, 1924, he requested deeds to the property. Talman, president of the vendor land company, sent the forms to Casady with a request that he, Casady, fill them out as he wished to have them; this was done, whereupon the deeds were executed and returned to Casady. It is argued that to complete the conspiracy, Casady delivered these deeds, in the condition in which he had received them, to the intervener. The undisputed evidence is that upwards of two years and four months before plaintiff's judgment was rendered, Casady was indebted to the bank, and, having then received from the bank an additional advance of approximately $2,000, he executed and delivered to the bank, as security for the payment of these debts, an assignment of the contract for deed. To have written his own name as grantee in the deeds, and recorded them, thus jeopardizing intervener's security, would have constituted bad faith, at least, on his part. The evidence does not challenge the good faith of the bank in taking the assignment as security nor that of Casady in the execution and delivery thereof to the bank, although by way of doing so several witnesses, who had bought parcels of the land from Casady, testified that Casady had not informed them of the assignment to the bank. In this connection, however, no duty is shown to have arisen requiring Casady to give them information concerning that transaction.

The finding by the trial court on this phase of the case is, therefore, sustained.

It is urged that, by force of the statute, the docketing of plaintiff's judgment established it as a lien against the real estate in question, and that such lien, because of failure to record the assignment of contract, is superior to the rights and interests acquired by the intervener by such assignment. Bearing in mind that at common law a judgment did not operate as a lien on the real estate of the debtor, that the lien of a judgment is entirely the creature of statutory enactment, and that the character and extent of the lien as well as the nature or kind of property to which it attaches, are under the control of the legislature, we must turn to the statutes bearing on this proposition for the solution of the question raised. Section 7691, Comp. Laws 1913, pro-

vides that a judgment may be docketed with the clerk of the district court and when so docketed "it shall be a lien on all the real property . . . of every person against whom any such judgment shall be rendered which he may have at the time of docketing thereof. . . ." It is contended then, that by virtue of this statute, the lien attaches not only to the legal title, but to the equitable interest or right which the judgment debtor may have in and to the property; that Casady as vendee in the contract for deed was the actual owner of the property; that the vendor delivered deeds to him conveying the property; and that although these deeds were executed in blank as to the grantee, Casady is the only person authorized to fill in the name of the grantee, and consequently the deeds are ineffective to convey the title to any except Casady. In our view of this case, it is not necessary to determine the status of these deeds, for, even though plaintiff's judgment became a lien against the interest of Casady in and to this real estate, and as to this see Cummings v. Duncan, 22 N. D. 534, 134 N. W. 712, Ann. Cas. 1914B, 976, under the facts and circumstances as they exist by the record in this case, only the actual interest which Casady had in the property is subject to such lien. Dalrymple v. Security Improv. Co. 11 N. D. 65, 88 N. W. 1033; Arntson v. First Nat. Bank, 39 N. D. 408, L.R.A.1918F, 1038, 167 N. W. 760; 15 R. C. L. 798, 799, 806; 34 C. J. 593. The case of Ildvedsen v. First State Bank, 24 N. D. 227, 139 N. W. 105, is cited and relied on by appellant as decisive of this case. In that case the plaintiff brought action to quiet her title against the levy of an attachment and subsequent sale under execution at the suit of the defendant against the husband of plaintiff. Plaintiff at the time of the levy of the attachment, held an unrecorded deed executed by her husband purporting to convey to her the premises in question. The court, through Judge Fisk, who also wrote the opinion in Cummings v. Duncan, supra, held that the rights of defendant under the attachment and an execution sale of the premises, were superior to those of plaintiff under the unrecorded deed and that the words "in good faith" in § 5594, Comp. Laws 1913, have reference not only to subsequent purchasers, but to attachment and judgment creditors as well. In the case at bar, the record title to the property was in the Northern Town & Land Company, which executed and delivered to Casady a contract for deed. More than two years prior to the docket-

ing of the judgment in question, Casady assigned the contract for deed to the intervener. The record title was at no time in the name of Casady. This brings us to a consideration of § 5594, Comp. Laws 1913, and its bearing upon the facts in the case. In part it is as follows: "Every conveyance by deed, mortgage or otherwise of real estate within this state shall be recorded in the office of the register of deeds of the county where such real estate is situated, and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance . . . is first duly recorded; or as against any attachment levied thereon or any judgment lawfully obtained at the suit of any party *against the person in whose name the title to such land appears of record, prior to the recording* of such conveyance."

Thus, by the express terms of the statute plaintiff's judgment, which exists against Casady alone, has no such effect as is asserted for it. See Crosson v. Kartowitz, 43 N. D. 466, 175 N. W. 868; Young v. Salzer Lumber Co. 52 N. D. 685, 204 N. W. 8; McCoy v. Davis, 38 N. D. 328, 164 N. W. 951. We borrowed § 5594, Comp. Laws 1913, from the state of Minnesota, and the supreme court of that state has consistently held that this statute, so far as it refers to the priority of the liens of attachments and judgments, "has exclusive reference to the title as it appears of record in the office of the register of deeds' of the county in which the land is situated." Coles v. Berryhill, 37 Minn. 56, 33 N. W. 213; Lyman v. Gaar, S. & Co. 75 Minn. 207, 74 Am. St. Rep. 452, 77 N. W. 828; Kelly v. Byers, 115 Minn. 489, 132 N. W. 919; Butterwick v. Fuller & J. Mfg. Co. 140 Minn. 327, 168 N. W. 18; Farmers·& M. State Bank v. Stageberg, 161 Minn. 413, 201 N. W. 612. In the case of Lyman v. Gaar, S. & Co. 70 Minn. 207, 74 Am. St. Rep. 452, 77 N. W. 828, the court having this section under consideration, said: "Independent of this statute, the rights of attachment and judgment creditors are precisely as they were at common law; that is, the lien of the levy or judgment attaches only to the actual interest the debtor had in the land at the time of the levy or docketing of the judgment. And where, as in this case, the creditor seeks to subject the property of a third party to the payment of his debt against a prior owner thereof, he must bring himself within

the statute. The defendant has not done so in this case. The meaning of this statute is not doubtful. It places attachment and judgment creditors on a footing with bona fide purchasers as against an unrecorded conveyance, only where the attachment or judgment is against the persons in whose name the title to the land appears of record; that is, it allows their liens to attach to the lands of their debtors according to the title as it appears of record prior to the recording of such conveyance, and not as it exists in fact. . . . In this case Buzzell never had any title of record to the land; hence the unrecorded assignment of his contract for its purchase was not void as against the defendant's attachment and judgment, and the defendant acquired no lien on, or interest in, the land by its attachment and judgment."

Appellant strenuously insists, however, that notwithstanding the absence of a levy, by attachment or execution, the filing and recording of the notice of lis pendens and the commencement of this action, having for its object and purpose the subjection of this property to execution, are equivalent to a levy on and an attachment of the land, and, that thereupon it acquired for its judgment, a lien superior to the equities therein of the intervener.

Section 7425, Comp. Laws 1913, relating to the filing and recording of notices of lis pendens, in part, provides: "From the time of filing only shall the pendency of the action be constructive notice to a purchaser or incumbrancer of the property affected thereby; . . . and every person, whose conveyance or incumbrance is subsequently executed or subsequently recorded, shall be deemed a subsequent purchaser or incumbrancer and shall be bound by all the proceedings taken after the filing of such notice to the same extent as if he were made a party to the action."

It is well settled that the notice of lis pendens does not of itself create in the party recording it any lien or interest in the property; and it will hardly be seriously contended that its deficiency in this respect can be supplied by the allegations in the complaint in the action in which the notice is filed. Such is not the purpose of the notice of lis pendens. It constitutes and gives constructive notice to the public of the pendency of the action and of its object and purpose, so that any one not a party to the action holding an outstanding unrecorded title or right, may appear in the action, assert the same and have the

superiority of his claim adjudicated; otherwise, by the terms of the statute, he will "be bound by all proceedings taken after the filing of such notice to the same extent as if he was a party to the action." Rights and interests in the property in suit, acquired in good faith for value before the filing and recording of the notice, not having been acquired pendente lite, will generally be protected, if properly before the court, though the instrument evidencing the conveyance or transfer has not been recorded. 17 R. C. L. 1009, 1030; 38 C. J. 58, 59; Bateman v. Backus, 4 Dak. 433, 34 N. W. 66; Beyer v. Investors' Syndicate, 47 N. D. 358, 182 N. W. 934; Boehm v. Long, 43 N. D. 1, 172 N. W. 862; Buxton v. Sargent, 7 N. D. 503, 75 N. W. 811; Jones v. Williams, 155 N. C. 179, 36 L.R.A.(N.S.) 426, 71 S. E. 222; Hayes v. Nourse, 114 N. Y. 595, 11 Am. St. Rep. 700, 22 N. E. 40; Justice v. Shaw, 103 Neb. 423, 172 N. W. 253; Merrick v. Pattison, 85 Wash. 240, 147 Pac. 1137; Lamont v. Cheshire, 65 N. Y. 30; Moulton v. Kolodzik, 97 Minn. 423, 107 N. W. 154, 7 Ann. Cas. 1090; West Missabe Land Co. v. Berg, 92 Minn. 2, 99 N. W. 209. The conflict of authorities on this question is more apparent than real, the differences arising either from the wording of the statute providing for notice of lis pendens or from the recording statute. Thus, the case of Wilson v. Robinson, 21 N. M. 422, 155 Pac. 732, Ann. Cas. 1918C, 49, cited and relied on by counsel, the holding in which seems to support his contention, turned upon the wording of the recording statute of that state in which it is provided (Code 1915, § 4791). "None of said writings shall be valid, except to the parties interested and those who have actual notice of the same, until it shall be deposited in the office of the clerk to be registered." The deed in question in that case not having been so deposited, the court said: "Hence under the plain language of the statute, he is to be considered a subsequent purchaser and necessarily is charged with notice of the fact that his grantor's title was attacked in this action. Hence he must stand or fall with his grantor." Likewise in Wolfenberger v. Hubbard, 184 Ind. 25, 110 N. E. 198, Ann. Cas. 1918C, 81, cited by counsel, appellant not having recorded her conveyance within the time prescribed by the law of that state, "was to all intents and purposes a purchaser pendente lite." To the same effect also see Moore v. Schneider, 196 Cal. 380, 238 Pac. 81. The rule with reference to

these jurisdictions is stated in 21 Am. & Eng. Enc. Law, 2d ed. 652, to be: "Under those recording acts which declare conveyances invalid against all persons except the parties thereto and persons having notice thereof, unless recorded, and *not merely against subsequent bona fide purchasers or incumbrancers,* one who takes but does not record a conveyance prior to the lis pendens is a pendente lite purchaser."

Appellant, however, insists that by the terms of the statute § 7425, Comp. Laws 1913, viz.: "every person whose conveyance or incumbrance is subsequently executed or *subsequently recorded* shall be deemed a subsequent purchaser or incumbrancer and shall be bound etc.," the intervener must be considered as a purchaser pendente lite, and its rights so acquired should be held to be subject and inferior to the lien of the judgment of appellant.

The statute was taken from the New York Code of Civil Procedure, and has existed in its present form since early territorial days. Code Civ. Proc. 1877, § 101. In the case of Lamont v. Cheshire, 65 N. Y. 30, the court of appeals said: "It has been seen in the course of this discussion, that the theory of a lis pendens is that there must be no innovation in the proceedings so as to prejudice the rights of the plaintiff. It is simply a rule to give effect to the rights ultimately established by the decree. Applying this doctrine in the present case, it would be impossible to claim that a lis pendens could give a creditor under an attachment, a lien superior to the title of a purchaser under an unrecorded conveyance. The statute distinctly provides that a person whose conveyance is executed or recorded subsequent to the filing of a notice shall be deemed a subsequent purchaser, and bound by the proceedings to the same extent as if he were a party to the action. It is necessary to ascertain therefore, what would have been the effect if defendants had been made parties to the action. Had the plaintiff made the defendants parties to the action, his attachment proceedings would, of course, have been nugatory. As soon as the whole case had been disclosed it would have appeared that he was making a claim against a person who was in no respect liable to him and his complaint would have been dismissed. How can he, under the statute, have any greater claims by omitting him? The words 'to the same extent as if he were a party to the action' cannot be omitted in construction. The scope of the clause is quite apparent. The case of conveyances

executed after the filing of the notice comes within the ordinary rules of equity. What is new in the . . . Code is the provision in respect to a conveyance executed prior to and recorded subsequent to the filing of the notice. . . . There is but one single underlying principle. That is, that the holder of the unrecorded instrument is affected to the same extent 'as if he were a party to the action,' and had not appeared or made any defense."

The precise question raised in the case at bar was considered by the supreme court of Washington in Merrick v. Pattison, 85 Wash. 240, 147 Pac. 1137. The Washington statute is identical with ours. Said the Washington court: "This, we think, is only a law of procedure, enacted with a view of making a decree, of the nature here sought, if ultimately rendered in favor of the plaintiff, effective, not only against the original defendant in the action, but also effective against one who purchases the property or whose conveyance evidencing such purchase is recorded after the filing of the notice of pendency of the action 'to the same extent as if he were a party to the action.' In other words, the statute and a notice of lis pendens filed in pursuance thereof has the effect of constructively making the one claiming under such subsequently executed or recorded conveyance a party to the action. It does not follow that a decree must necessarily be rendered in favor of the plaintiff because his notice of lis pendens is prior in time to the recording of a conveyance of a purchaser. Such purchaser is not thereby prevented from asserting his claimed rights as against the claims of the plaintiff and having the same determined upon the merits. . . . The notice of lis pendens, as we view it, has no practical effect on the substantive rights of the respective parties, but is only a method of forcing a purchaser under a subsequently recorded conveyance to set up his claim of right in that action or have the decree therein, which may be rendered in favor of the plaintiff, made effective against him as well as the original defendant."

See also discussions of these propositions in Justice v. Shaw, 103 Neb. 423, 172 N. W. 253, under statute identical with ours, and Moulton v. Kolodzik, 97 Minn. 423, 107 N. W. 154, 7 Ann. Cas. 1090, where the statute differs from ours in no essential particular.

The trial court found (and the evidence is undisputed) that the assignment of the contract for deed was executed and delivered to inter-

vener as security for the payment of its indebtedness against Casady. The court also found that plaintiff had not levied execution upon nor attached the interest of Casady, and the court concluded that, plaintiff having no lien on the land, the action should be dismissed. It is our opinion that in the place of dismissing the action, the court should have determined the rights and equities of the parties and ordered judgment accordingly. That Casady owned an interest in this property which might be reached by execution, is beyond controversy. Plaintiff caused execution to be issued upon the judgment and placed in the hands of the sheriff of McKenzie county, of which Casady was then a resident. The sheriff returned the same wholly unsatisfied prior to the commencement of this action. Thus it was demonstrated, by the usual procedure, that the debtor had no other property from which the judgment could be made, and that plaintiff was without remedy at law. In this situation it seeks the assistance of a court of equity. Under this showing, it is our opinion, that plaintiff is entitled to have the nature and extent of the interest of its debtor in and to the property in question ascertained and determined that it may subject the same to execution upon its judgment. Paulson v. Ward, 4 N. D. 100, 58 N. W. 792; Fridley v. Munson, 46 S. D. 532, 30 A.L.R. 501, 194 N. W. 840; Parsons v. Cathers, 92 Neb. 525, 138 N. W. 747; Williams v. Kemper, 99 Minn. 301, 109 N. W. 242; Watkins v. Wilhoit, 4 Cal. Unrep. 450, 35 Pac. 646; Comstock v. Horton, 235 Mich. 282, 209 N. W. 179.

This holding is not in conflict with the rule stated in the case of Bank of Sanborn v. France, 49 N. D. 1, 177 N. W. 375. In that case the Bank of Sanborn, indorsee and owner of a promissory note executed by France, as maker, having no lien on the real estate of the maker of the note, sought to maintain an action to set aside an alleged fraudulent conveyance, without having first obtained a lien by attachment, judgment or otherwise. Holding that the action was prematurely brought, this court said: "The mere existence of the relation of debtor and creditor does not afford the creditor, under his mere contract right, and in the absence of a judgment, or prior to the time his claim was reduced to a judgment, and an execution thereon issued, and returned unsatisfied, or the securing of a lien, by attachment, or a vested lien acquired in some other manner, the right to attack a conveyance, on

the ground of fraud." In this case the plaintiff's claim was reduced to judgment, an execution issued upon that judgment, placed in the hands of the sheriff, and by him returned unsatisfied.

We therefore hold that Casady is the owner of, and has a right of redemption in, the lands and premises set forth in the complaint; that the intervener holds the equitable title thereto as security for the payment to it by Casady of the sum of $5,826.50 and interest thereon at nine per cent per annum from November 18, 1925. That subject to the rights of intervener, plaintiff has the right to levy upon and sell said premises for the satisfaction of its judgment. The judgment of the district court is therefore modified to this extent and the case remanded to the district court with directions to enter judgment in accordance with this opinion.

Inasmuch as Judge Burr, who heard the case in district court, is now a member of this court, Honorable George H. Moellring, one of the judges of the fifth judicial district, is designated to enter said judgment.

BIRDZELL, Ch. J., and NUESSLE, CHRISTIANSON and BURKE, JJ., concur.

Mr. Justice BURR, being disqualified, did not participate, Honorable THOMAS H. PUGH, Judge of the Sixth Judicial District, sitting in his stead.